United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIRGIL BAKER, et al.,

    Plaintiffs,

    v.

AEGIS WHOLESALE CORPORATION, et al.,

    Defendants.
_____/

No. C 09-5280 PJH

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART**

Defendants' motion to dismiss plaintiffs' fourth amended complaint came on for hearing on January 20, 2010 before this court. Plaintiffs Virgil A. Baker, Charles B. Lowery, Elizabete Lowery, Ellanore Largent, and David Largent ("plaintiffs"), appeared through their counsel, Michael A. Bowse. Defendants Residential Funding Company LLC ("RFC") and Countrywide Home Loans ("Countrywide"), appeared through their respective counsel, Jan T. Chilton and Robert Bader. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendants' motion in part and DENIES it in part, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This is an action alleging common law fraud, and violations of California's Unfair Competition Law ("UCL").

The complaint arises from defendants' alleged involvement in the issuance of what are known as Option Adjustable Rate Mortgage ("ARM") Loans. Plaintiffs Virgil A. Baker, Charles B. Lowery, Elizabete Lowery, Ellanore Largent, and David Largent (collectively "plaintiffs") all entered into Option Arm Loans with defendant Aegis Wholesale Corporation

("Aegis"),[1] which loans were subsequently sold to either defendant Residential Funding Company LLC ("RFC") or defendant Countrywide Home Loans ("Countrywide").

The terms of the mortgages that all plaintiffs entered into with Aegis are similar. Plaintiffs generally allege that these Option ARM loans worked as follows:

The loans were all notable for having initial low "teaser" rates (ranging from 1% to 3%). These rates were subject to a quick and early rate adjustment, as follows: initially, the loans offered the low teaser interest rate, which resulted in an initial minimum monthly payment that was low. However, the interest rate on the loan was pegged to a variable index that changed over time. After only one month, the teaser rate adjusted to a new indexed rate, which increased the rate substantially from the low initial teaser rate to a higher index-based rate, which was and continues to be calculated by adding a "margin" (for e.g., 3%) to an indexed figure.

Despite the almost immediate rise in the applicable interest rate, however, plaintiffs' minimum monthly payment remained the same as that initially disclosed to the buyer upon closing, because the loan terms permit only one annual increase to the minimum monthly payment. Thus, because the initial monthly payment was based on a teaser interest rate and did not rise with the actual interest rate that soon thereafter was charged, plaintiffs' mortgages began to accrue interest each month in an amount greater than the amount of plaintiffs' monthly payments. The remaining interest not paid down each month was then added to the balance of unpaid principal and itself began accumulating interest. Consequently, the principal balance of plaintiffs' loans increased, even as plaintiffs made/make the minimum monthly payment disclosed on the loan documents. This situation is known as negative amortization, the result of which is an ultimate reduction in the borrower's equity.

In addition, the loan terms imposed a "payment cap" on the amount of each annual

---

[1] Aegis declared bankruptcy, and it was dismissed from the case on December 15, 2009 (Docket No. 22).

2

increase to the minimum monthly payment, limiting that increase to 7.5% (i.e., usually a small fraction of the new higher interest rate that was immediately adjusted 30 days after the loan closing). However, the terms also provided that, if the loan's overall unpaid principal balance reaches 115% of its original value, the payment cap no longer applied and the remaining principal would be paid off in equal monthly payments over the remaining term of the loan (i.e., is fully amortized).

Based on these facts, plaintiffs allege that the Option ARM loans, as disclosed in the Option ARM mortgage notes ("ARM Notes") and the Truth in Lending Disclosure Statements ("TILDS") issued to plaintiffs at closing, failed to materially disclose: (a) that the low teaser rate set forth in the ARM Note was only available for thirty days, if at all; (b) that the monthly payment amounts for the first three to five years provided to plaintiffs in the TILDS were insufficient to pay both the accrued interest and principal on the loans; (c) that negative amortization was absolutely certain to occur if plaintiffs made payments according to the schedule of monthly payments provided in the TILDS; and (d) that loss of equity and/or loss of plaintiffs' residences was also certain to occur if plaintiffs made payments according to the schedule set forth in the TILDS. See generally Fourth Amended Complaint ("FAC"), ¶ 1.

On October 17, 2008, plaintiff Baker filed the instant action in Contra Costa County Superior Court, on behalf of himself and a national putative class similarly situated. Plaintiff named Aegis as a defendant. After the filing of a first and second amended complaint, plaintiff filed a third amended complaint on September 25, 2009. The third amended complaint added the Lowerys and Largents as named plaintiffs, and furthermore added Countrywide and RFC as named defendants. The third amended complaint collectively alleged two causes of action against defendants: fraudulent omissions; and violations of the California's Unfair Competition Law ("UCL"), codified at Bus. & Prof. Code § 17200.

On November 5, 2009, defendants removed the action to federal court, asserting jurisdiction under the Class Action Fairness Act ("CAFA").

3

In December 2009, defendants moved to dismiss the third amended complaint. On February 22, 2010, after a hearing on the motion, the court granted defendants' motion to dismiss. Specifically, the court (1) dismissed the first claim for fraudulent omissions for failure to plead fraud with particularity pursuant to FRCP 9(b); and (2) dismissed the second claim under California's UCL for failure to plead fraud with particularity under 9(b) (to the extent based on fraud), and for failure to allege the provisions of the Federal Trade Commissions Act that were violated (to the extent a FTCA claim was pled). In addition, to the extent the UCL claim was predicated on violations of the Truth in Lending Act ("TILA"), that portion of the claim was dismissed with prejudice, since it was time-barred. See generally Order Granting Defendants' Motions to Dismiss ("Dismissal Order"). Plaintiffs were given leave to once again amend their pleading.

On March 12, 2010, plaintiffs duly filed the operative fourth amended complaint. The complaint continues to allege the same two claims against defendants, stated by way of four causes of action: (1) fraudulent omissions (Largent plaintiffs against Countrywide); (2) fraudulent omissions (Baker and Lowery plaintiffs against RFC); (3) UCL violations (Largent plaintiffs against Countrywide); and (4) UCL violations (Baker and Lowery plaintiffs against RFC). See generally FAC.

Defendants again move to dismiss the fourth amended complaint.

**DISCUSSION**

A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

4

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n] that the pleader is entitled to relief. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). There are several exceptions to this rule. The court may consider a matter that is properly the subject of judicial notice, such as matters of public record. Id. at 689; see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir.1994).

B.  Legal Analysis

The gravamen of plaintiffs' complaint is rooted in the disclosures contained in the ARM Note and the TILDS handed to plaintiffs at the closing of their loans with Aegis. Defendants' dismissal motion raises four issues for resolution: (1) whether the Largent plaintiffs' fraudulent omissions claim against Countrywide is time-barred; (2) whether TILA preempts plaintiffs' state law claims; (3) whether plaintiffs have adequately alleged their claim for fraudulent omissions; and (4) whether plaintiffs have adequately alleged their UCL claim.

As a preliminary matter, when ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. See Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir.1988). Here, plaintiffs have attached each plaintiffs' ARM Note and TILDS as exhibits to the complaint, and all parties make reference to these documents in their arguments. Thus they may properly be considered by the court.

1.  <u>Whether the Largents' Claim Against Countrywide is Time-Barred</u>

Defendants contend that the Largents' fraudulent omissions claim against Countrywide is time-barred. Plaintiffs, who acknowledge that a three year statute of limitations applies to the claim and would normally bar the Largents' claim (since the Largents' loan closed on February 8, 2006, and they filed their complaint on September 25, 2009), assert that equitable tolling is applicable to save the claim. Plaintiffs base this argument on the Ninth Circuit's recent decision in Hatfield v. Halifax, 564 F.3d 1177 (9th

Cir. 2009); and Cal. Code of Civ. Proc. §§ 474 and 583.210(a).

Neither the former nor the latter are sufficient to toll the Largents' claim. By virtue of the former, plaintiffs seek to invoke what is known as the class tolling doctrine. The class tolling doctrine provides that the commencement of a class action stops the running of the statute of limitation as to all claims that might be asserted by all members of the class. See Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983); see also Tosti v. City of Los Angeles, 754 F.2d 1485 (9th Cir. 1985). Hatfield embraces this rule, and held that a plaintiff's individual claims against defendants were equitably tolled by the timely filing of her nearly identical class action against the same defendants filed earlier in New Jersey state court. See Hatfield, 564 F.3d at 1184-85 (noting that California law permits equitable tolling and also, that "California courts have permitted a plaintiff to take advantage of tolling based on the filing of a prior class action," even where the plaintiff was only a putative class member in the earlier action).

Here, plaintiffs invoke the class tolling rule by claiming that the filing of a prior unrelated class action – Velazquez v. GMAC Mortgage et al., pending and then voluntarily dismissed in the Central District of California – tolls the statute of limitations on the Largents' claim, since the Largents were members of the putative class in Velazquez. However, as defendants point out, this argument contains a major flaw: Countrywide was never a named defendant in the Velazquez action. And nothing in the foregoing cases suggests that equitable tolling should be applied to a plaintiff's subsequent claims based on the pendency of an earlier filed action that was never brought against the later defendant.

Nor does reliance on the latter of plaintiff's cited authorities – Cal. Code of Civ. Proc. §§ 474 and 583.210(a) – help plaintiffs. Section 474 allows plaintiffs to name DOE defendants in an action, and section 583.210(a) provides that the summons and complaint

7

may be served upon a defendant within three years after an action against the defendant is commenced. Plaintiffs appear to suggest that Countrywide was still within the three year limitation to be served as a DOE defendant in the Velazquez action, and that this worked to preserve plaintiffs' ability to apply tolling to claims against Countrywide in the present action, even though Countrywide was not officially named previously.

While creative, this argument is ultimately unpersuasive. Plaintiffs present no controlling authority that stands for the proposition that a plaintiff's claim against a named defendant in a subsequent action may have equitable tolling principles applied, based on the argument that the defendant *might have been* timely named as a DOE defendant in the prior action.

In the absence of any applicable tolling doctrine, the Largents' claim against Countrywide is untimely. Thus, the Largents' fraudulent omissions claim against Countrywide is DISMISSED.

### 2. Whether TILA Preempts State Law Claims

Defendants assert that TILA preempts plaintiffs' fraudulent omissions and UCL claims, because these state law claims are primarily premised on alleged misrepresentations contained in the TILDS – a disclosure document mandated by TILA. Furthermore, to the extent plaintiffs seek to impose disclosure obligations on defendants that are not contained in the TILDS, these obligations are in addition to and inconsistent with TILA, and thus preempted on that basis, too. As a corollary argument, defendants also contend that because the disclosures in the TILDS necessarily complied with TILA's disclosure requirements, such compliance also generally provides a safe harbor from plaintiffs' state law challenges to the TILDS disclosures under the UCL or fraudulent omissions causes of action.

TILA preempts state law claims pursuant to 15 U.S.C. § 1610. However, the preemption provisions of TILA do not preempt state law unless the state law is actually inconsistent with TILA. See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1007 (9th Cir.

2008); see also Yang v. Home Loan Funding, Inc., 2010 WL 670958, * 10 (E.D. Cal. 2010). Different courts in the northern district have come to differing conclusions as to whether claims alleging UCL violations or fraudulent omissions are inconsistent with TILA, thereby triggering preemption. See, e.g., Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1099 (N.D. Cal. 2008)(J. Wilken)(no TILA preemption of UCL claims because UCL "does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than TILA's in any way"); see also Amparan v. Plaza Home Mortg., Inc., 678 F. Supp. 2d 961, 976 (N.D. Cal. 2008)(J. Fogel)(same); cf. Kajitani v. Downey Sav. & Loan Ass'n, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008)(plaintiffs' common law fraud claim preempted to the extent it alleged misrepresentations in the disclosure documents required under TILA); Yang, 2010 WL 670958, * 10.

    The court agrees with the reasoning expressed in Plascencia and Amparan. On their face, neither plaintiffs' fraudulent omissions claim nor the UCL claim conflict with TILA's provisions regarding the disclosure of information in connection with credit transactions. Nor do plaintiffs allegations contend that defendants were in fact required to make disclosures that contradict TILA's requirements. And while defendants raise the argument that it is the imposition of possible additional disclosures that plaintiffs argue should have been made that engender an actual conflict with TILA, the court is unpersuaded. See also Brooks v. Comty. Lending, Inc., 2010 WL 2680265, *5 (N.D. Cal. 2010). Finally, plaintiffs' claims are distinct from those advanced in the cases relied on by defendants here, because they are premised on defendants' alleged violation of an independent common law duty to disclose material information – not TILA violations per se. See FAC, ¶¶ 72-77, 89-94, 111, 135. All of which compels the conclusion that no preemption results.[2]

---

    [2] It should also be noted that, even if preemption were to result, TILA only preempts state claims based on required written information, i.e. on deficient or false TILDS. See, e.g., Kajitani, 647 F. Supp. 2d at 1220. Thus, to the extent that plaintiffs' claims for fraud

9

Defendants' safe harbor arguments under TILA raise similar issues. The California Supreme Court has explained that conduct affirmatively authorized by another statute may provide a defendant with a safe harbor from UCL liability: "Although the unfair competition law's scope is sweeping, it is not unlimited.... When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999)(to forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct"). However, as the state supreme court noted, there must be an actual conflict between TILA and the conduct alleged under the UCL in order for the safe harbor provision to kick in.

Again, the court is not persuaded that TILA clearly conflicts at this juncture with the claims asserted by plaintiffs, including plaintiffs' UCL claim. Thus, the court is also not persuaded that defendants' apparent compliance with certain TILA disclosure requirements – as reflected by either the TILDS or the ARM Notes – automatically provides a safe harbor from plaintiffs' state law challenges to nature of defendants' disclosures contained therein.

### 3. Whether the Fraudulent Omissions Claim is Properly Alleged

To state a claim for fraudulent concealment, a plaintiff must allege (1) concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent to defraud; (4) actual, justifiable reliance; and (5) resulting damages. Blickman Turkus, LP v. MF Downtown Sunnyvale LLC, 162 Cal. App. 4th 858, 868 (2008)(citing Mktg. West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 612-13 (1992)). Defendants here make several arguments against plaintiffs' ability to state a claim for fraudulent omissions against RFC, including:[3] that the loan documents clearly set forth the

---

and under the UCL are based on false or misleading *oral* representations, or false or misleading written representations contained in the ARM Note, such claims would not be preempted by TILA at any rate. See id.

[3] Defendants also target plaintiffs' ability to state a fraudulent omissions claim against Countrywide. However, since the Largents' claim against Countrywide is being dismissed as time-barred, the only fraudulent omissions claim that remains is asserted by the

10

terms of plaintiffs' loans and even the omissions that plaintiffs now claim are actionable; that defendants had no duty to disclose; that defendants cannot be held liable on the basis of Aegis' failure to disclose; and that plaintiffs fail to plead facts necessary to support a plausible claim that RFC aided and abetted Aegis' alleged misconduct.

The gist of plaintiffs' allegations are: that the loan documents in question, which include the ARM Note and the TILDS, failed to disclose that the initial teaser rate would increase dramatically after a month; that the monthly payment amounts listed in the TILDS for the first three to five years were insufficient to pay both principal and interest; that negative amortization was certain to occur if plaintiffs made payments according to the payment schedule; that the loan terms disclosed to plaintiffs in the documents were all underwritten and dictated by defendants; and that defendants were in the business of purchasing and securitizing Option ARM loans and purchased plaintiffs' loans pursuant to longstanding mortgage loan purchase agreements between defendants and Aegis; and that defendants knew that the terms disclosed to plaintiffs in the loan documents did not paint the whole picture of plaintiffs' liability for payments under the disclosed payment schedule. See FAC, ¶¶ 19-26, 28, 34-35, 50, 54, 55-56, 72-77, 90-94.

On balance, these allegations are sufficient to withstand defendants' motion to dismiss plaintiffs' claim against RFC. First, while defendants are correct that the loan documents expressly disclosed certain items which form a part of plaintiffs' claim – i.e., the loan interest rate, the fact that plaintiffs' minimum payment could be lower than the actual interest being charged on a monthly basis, and the options for different payment structures that would allow plaintiffs to pay amortized payments – defendants do not dispute that the loan documents do not disclose that the payment schedule set forth is based on the initial teaser rate, or that, because of the immediately adjustable interest rate, combined with the limited yearly adjustments to the monthly minimum payment, plaintiffs would necessarily be entering into negatively amortizing loans if they continued to pay the minimum monthly

---

Baker and Lowery plaintiffs against RFC.

payment initially disclosed. And while plaintiffs may not ultimately be able to prove that defendants' purported omissions render defendants liable here, plaintiffs are nonetheless entitled to have *all* the information provided to them in connection with their Option ARM loans considered collectively, in assessing whether the disclosures were clear, conspicuous, and complete. See, e.g., Brooks, 2010 WL 2680265 at * 7.

Second, the court agrees with plaintiffs that, for purposes of the present motion to dismiss, plaintiffs have adequately alleged a duty to disclose, premised on California common law doctrine regarding the duty to disclose all material facts, once partial disclosure of material facts is undertaken. See FAC, ¶ 89.

Finally, defendants overlook the fact that plaintiffs have alleged that RFC (and Countrywide) were involved in a scheme by which they expressly underwrote and approved all loan terms provided in the documents handed to plaintiffs, and that RFC had a contract with Aegis whereby it had both the financial incentive and a contractual basis on which to use Aegis as its intermediary in providing loans to consumers. Plaintiffs also plead that RFC pre-approved the Option ARM Notes, that it knew that the loan documents disclosed low payments in the TILDS that were predicated on an interest rate which would not exist after the first thirty days, that RFC was in fact aware of the material omissions contained in the loan disclosure statements, and that RFC even provided a stream of funding to Aegis that enabled Aegis to originate the subject Option ARM Notes. See, e.g., FAC, ¶¶ 94-95. This is sufficient to adequately plead defendant's liability for fraudulent omissions, as part of a common course of conduct, together with Aegis. It is also sufficient at this juncture as a basis from which to reasonably and at least plausibly infer that RFC aided and abetted Aegis' misconduct. See In re First Alliance Mortg. Co., 471 F.3d 977, 993 (9th Cir. 2006)(recognizing California's rule that aider and abettor liability may be imposed on "one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act").

The court accordingly DENIES defendants' motion to dismiss plaintiffs' fraudulent omissions claim against defendant RFC.

4. Whether UCL Claim is Properly Alleged

Finally, defendants target plaintiffs' ability to state a valid UCL claim under any of the three prongs available under the UCL: the unfair, unlawful, or fraudulent prongs. See Cal. Bus. & Prof. Code § 17200 (to state a claim pursuant to §17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair, or fraudulent business act or practice" or in "unfair, deceptive, untrue or misleading advertising"). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. See Pastoria v. Nationwide Ins., 112 Cal. App. 4th 1490, 1496 (2003).

The court finds that plaintiffs have adequately alleged a claim under the UCL, at least with respect to the unlawful and unfair prongs specifically. An act is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law. See Cel-Tech. Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000)(the UCL also incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law); Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838-39 (1994). Here, plaintiffs allege that defendants have violated the Federal Trade Commission Act, 15 U.S.C. § 45. See FAC, ¶ ¶ 119-20, 143-44. Under the FTC Act, a practice is unfair if it causes substantial injury; which injury is not outweighed by any countervailing benefits to consumers or competition; and the injury is one that consumers themselves could not reasonably have avoided. See 15 U.S.C. § 45(n). The court finds that, for the reasons detailed above in connection with plaintiffs' fraudulent omissions claim, these allegations are sufficient to adequately plead "unfair" conduct under the FTC Act, and therefor, "unlawful" conduct under the UCL.

Turning to the "unfair" prong, an act has been defined as "unfair" under the UCL if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of

one of those laws because its effects are comparable to or the same as a violation of the law." Cel-Tech, 20 Cal. 4th at 187.  Notwithstanding this pronouncement, the law is unsettled as to what constitutes an unfair business practice in consumer cases, and California appellate courts have also noted that "unfairness" under the UCL should be judged by the same standard used by the Federal Trade Commission in 15 U.S.C. § 45(n). See Camacho v. Auto. Club of South. Cal., 142 Cal. App. 4th 1394, 1403 (2006); Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 584 (2009).

On balance, and taking the state courts' collective guidance into account, the court finds that plaintiffs have adequately alleged defendants' participation in an "unfair" practice, for the same reasons as those just identified in connection with the "unlawful" prong.  As such, defendants' motion to dismiss on this ground must be denied.

Third, the court notes that with respect to the parties' remaining arguments regarding plaintiffs' ability to sufficiently plead "fraudulent" practices under the UCL, whether a practice is deceptive or fraudulent "cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer."  Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).  Rather, the determination is a question of fact, requiring consideration and weighing of evidence from both sides before it can be resolved.  See Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 857 (2002); Schnall, supra, at 1167.  The court finds that plaintiffs' allegations are sufficient – for the reasons described herein in connection with the plaintiffs' various UCL and fraudulent omissions claims against defendants, and consistent with the heightened pleading requirements that apply to specific allegations of fraud – to defeat defendants' motion.

Finally, to the extent that plaintiffs' UCL claim is premised on the Largent plaintiffs' proof that Countrywide is liable for fraudulent omissions against these plaintiffs, this claim is barred for the reasons explained above in connection with the Largents' fraudulent omissions claim specifically.

C. Conclusion

For all the foregoing reasons, the court hereby GRANTS defendants' motion to dismiss with prejudice, to the extent they argue that the Largent plaintiffs' fraudulent omissions claim against Countrywide is time-barred; and DENIES defendants' motion, with respect to the remaining plaintiffs' fraudulent omissions claim against RFC, and all plaintiffs' UCL claims against both RFC and Countrywide. A case management conference will be held on August 19, 2010, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: July 21, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge